IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02165-PAB

KATHRYN ZACEVICH,

    Plaintiff,

vs.

MICHAEL J. ASTRUE, Commissioner, Social Security Administration,

    Defendant.

## ORDER

This matter comes before the court on Plaintiff Kathryn Zacevich's complaint [Docket No. 1] filed on September 3, 2010.  Plaintiff seeks review of the final decision of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-83c.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I.  BACKGROUND**

Plaintiff applied for disability benefits on February 15, 2007.  Plaintiff claimed that she was unable to work due to disability beginning on June 30, 2005.  Plaintiff's claim was initially denied on April 26, 2007 and plaintiff requested a hearing.  After a hearing on November 18, 2008, R. at 24-53, an Administrative Law Judge ("ALJ") again denied plaintiff's claim in a decision dated February 5, 2009.  R. at 11-23.  In his decision, the

ALJ found that plaintiff had "the following severe impairments: degenerative disc disease of the lumbar spine; and obesity." R. at 14 (citing 20 C.F.R. § 404.1521). The ALJ determined, however, that these impairments, alone or in combination, did not meet one of the listed impairments in the regulation. *See* R. at 15. The ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform work activities with the following limitations: she can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk at 15-20 minutes at a time and at least 2 hours in an 8-hour workday; and sit 15-20 minutes at a time and at least 6 hours in an 8-hour workday. The claimant can occasionally climb ramps/stairs, stoop and crouch, but should avoid climbing ladders, ropes, and scaffolds.

R. at 16.

Based upon these findings and the testimony of a vocational expert ("VE"), the ALJ found that, although plaintiff could not perform her past relevant work, she could perform jobs existing in significant numbers in the national economy. R. at 21. Therefore, the ALJ concluded that plaintiff was not disabled during the relevant time period. R. at 21-22. The Appeals Council denied plaintiff's request for review of this denial. R. at 1-6. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence as a whole. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply

because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

> gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.   Plaintiff's Objections to the ALJ Decision

In her appeal, plaintiff presents two objections to the ALJ's decision: (1) the ALJ's RFC determination at step four was not based on substantial evidence; and (2) the ALJ erred at step five in finding that plaintiff could perform jobs existing in significant numbers in the national economy.

#### *1.   The ALJ's RFC Determination*

Plaintiff argues that the ALJ failed to accord proper weight to the opinion of plaintiff's treating physician, Dr. Judith Shlay, erroneously determined that plaintiff was not credible, and failed to consider all of the relevant medical evidence.  Docket No. 10 at 6-9.

Under the treating source rule, an ALJ is required to give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence."  20 C.F.R. § 404.1527(d)(2)).  If an ALJ decides not to assign controlling weight to the treating source's opinion, he must give "specific, legitimate reasons for his decision."  *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  Ultimately, where an ALJ does not assign a treating source's opinion controlling weight, he must still determine its appropriate weight by looking to the factors which apply to all medical opinions and give good reasons for the weight he ultimately assigns.  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

The ALJ considered a November 2008 report from Dr. Shlay, plaintiff's primary care physician. The ALJ characterized Dr. Shlay's report as including "significant functional limitations that would essentially render [plaintiff] unable to [do any] work." R. at 19. Plaintiff argues that Dr. Shlay's opinions should have been afforded controlling weight because they rely on her years of experience treating plaintiff and partially rely on a Magnetic Response Imaging ("MRI") scan of plaintiff's lumbar spine. Docket No. 10 at 5-6, 9.

The ALJ gave little weight to Dr. Shlay's opinions because he found they were not supported by objective clinical findings and were inconsistent with other evidence in the record. R. at 19. The ALJ found that the periodic progress reports from the Denver Health outpatient records, R. at 270-97, showed that plaintiff had no neurological deficits in either the upper or lower extremities, a fairly normal gait, good motor strength, and generally negative straight leg raises. R. at 19. The ALJ noted that these medical records showed that plaintiff's condition improved with physical therapy and that the reported numbness in her joints was neither uncontrollable nor debilitating, and would not prevent her from sustaining work on a regular basis. *Id*. The ALJ had concluded earlier in his decision that the MRI from November 6, 2008 did not support plaintiff's claimed need to lie down four to five times throughout the day because, although the MRI, R. at 309-13, showed mild to moderate degenerative disease, there was no nerve root involvement and there was no evidence of any physician establishing that plaintiff had a medically required need to lie down frequently during the day. R. at 19. The form that Dr. Shlay completed, which included the information about plaintiff

needing to lie down, does not provide an answer to the followup question concerning the reason that the patient needs to do so. R. at 315.

The Court finds that the ALJ cited specific evidence showing both that Dr. Shlay's opinion was not supported by "medically acceptable clinical and laboratory diagnostic techniques" and was inconsistent with other evidence in the record. The ALJ did not err when he gave Dr. Shlay's opinion little weight. *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).

Second, plaintiff argues that the ALJ wrongfully determined that her testimony was not credible. Docket No. 10 at 7-8. Plaintiff states that her testimony regarding her need to lie down several times a day was corroborated by Dr. Shlay. Moreover, plaintiff asserts that Dr. Laura Moran, who performed a consultative examination at the request of the Social Security Administration, concluded that plaintiff was truthful about the degree of pain she experienced, and that the record supported plaintiff's allegations. *Id.*

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The Tenth Circuit precedent does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ relies on specific evidence in evaluating the claimant's credibility. *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).

With regard to plaintiff's credibility, the ALJ concluded that "[w]hile the record as a whole establishes that she has 'severe' impairments that would limit her capacity to perform more than a range of work activities . . . the record as a whole does not

7

support the alleged severity of the claimant's impairments to the extent she alleges." R. at 17.  The ALJ concluded that plaintiff was not credible because of the inconsistencies between her alleged pain, her reported activities, and clinical findings.  R. at 17.  The ALJ found that plaintiff's claim that she is unable to work was inconsistent with her own testimony that she could cook, do some household cleaning, go to the grocery store, and drive.  *Id*.  The ALJ also found that plaintiff's statements that she had to lie down most of the day were inconsistent with her treatment records, which did not show that she had a medical need to lie down during the daytime.  *Id*.  Finally, the ALJ found that plaintiff reported increased relief through physical therapy, and that although the MRI results showed evidence of lumbar degenerative disease, the MRI results did not conclude that her condition necessitated surgery.  *See Jaramillo v. Massanari*, 21 F. App'x 792, 796 (10th Cir. 2001) ("[t]he inability to work pain-free is not sufficient to find a claimant disabled.").  Moreover, despite finding that plaintiff's intensity allegations were not credible, the ALJ nevertheless included those assertions of plaintiff that he did find credible within his RFC determination.  *See* R. at 16.

The Court finds that the ALJ's credibility determinations were proper.  His decision reflects a consideration of "all of the available evidence," 20 C.F.R. § 404.1529(c)(1), and he appropriately considered "whether there [we]re any inconsistencies in the evidence and the extent to which there [we]re any conflicts between [Ms. Zacevich's] statements and the rest of the evidence."  20 C.F.R. § 404.1529(c)(4).  Because the ALJ presented a thorough analysis that was closely linked to the evidence in the record, the Court finds that the ALJ's credibility

determination is adequately supported by the record and the Court is not free, as plaintiff's argument invites, to "reweigh the evidence." *Flaherty*, 515 F.3d at 1070.

Finally, plaintiff argues that the ALJ failed to consider all of the relevant evidence. Plaintiff argues that the ALJ discounted the state-issued Med-9[1] forms, which found that plaintiff was unable to work for 6-8 months, failed to acknowledge the patient's carpal tunnel diagnosis, and erred by giving the state medical consultant's opinion significant weight. Docket No. 10 at 7-9.

The Court finds no error in the ALJ's rejection of the Med-9 forms. The Med-9 forms are not completed by a treating source, nor are they accompanied by medically acceptable or clinical findings. Moreover, the Med-9 form is not a true medical opinion because it does not contain judgments about the nature and severity of plaintiff's physical limitations, or any information about the activities plaintiff could perform. *Johnson v. Astrue*, No. 10-cv-00782-CMA, 2011 WL 42293, at *8 (D. Colo. Jan. 6, 2011). Thus, because these opinions are conclusory, do not rely on adequate medical or clinical findings, and speak directly to disability which is an area reserved for the ALJ, the ALJ correctly discounted the Med-9 forms. *See Lopez v. Barnhart*, 183 F. App'x 825, 827 (10th Cir. 2006); *SSR 96-6p*, 1996 WL 374180, at *3 (July 2, 1996). Finally, the Court finds no error in the ALJ failing to aggregate the Med-9 forms' expected duration of condition.

---

[1] "Med-9" forms are used by the Colorado State welfare program to determine eligibility for aid to indigent and disabled individuals. *See Davis v. Astrue*, No. 09-cv-00881-REB, 2010 WL 3835828, at *4, n.4 (D. Colo. Sept. 23, 2010).

The ALJ found that plaintiff's allegations of carpal tunnel syndrome ("CTS") were not consistent with the record or supported by medical or clinical findings. R. at 14. The ALJ noted that plaintiff engaged in driving, cleaning, and other activities that are not consistent with a patient with an upper extremity condition. *Id*. The ALJ also noted that the medical evidence did not contain an electromyography ("EMG") report to support a finding of carpal tunnel syndrome. R. at 35. The ALJ concluded that the carpal tunnel syndrome was not a significant problem because plaintiff was not undergoing treatment for CTS, exams showed that plaintiff had good grip strength, no neurologic deficits, and plaintiff herself noted, *see* R. at 266-69, that this was not a constant problem. Given these facts, the Court concludes that the ALJ did not err when he concluded that plaintiff's carpal tunnel syndrome did not preclude her from performing work within the RFC limitations. *See Lopez*, 183 F. App'x at 830 (finding no error with the ALJ's rejection of plaintiff's self-reports of physical limitation because plaintiff did not undergo treatment and experienced normal reflexes, strength and sensation).

Plaintiff asserts that the ALJ should not have adopted the opinion of the state medical consultant because the consultant never examined plaintiff and did not have the benefit of plaintiff's MRI. Docket No. 10 at 10. The state medical consultant's RFC assessment concludes that plaintiff can lift 20 pounds occasionally, lift 10 pounds frequently, and sit for six hours in an eight hour workday. R. at 187. The ALJ gave this opinion significant weight because he found that it was more consistent with the evidence in the record when compared to plaintiff's treating sources. R. at 20. The opinion from the state medical consultant is supported by the limitations listed by Dr.

Moran after examining plaintiff on April 3, 2007.  *See* R. at 266-69.  Moreover, the state medical consultant's opinion is consistent with plaintiff's own testimony that she could "[lift] about 15 to 20 pounds . . . [and sit] from about 15 to 20 minutes."  R. at 36-39.

In conclusion, the Court finds that the ALJ's RFC determination is supported by substantial evidence.  The ALJ carefully considered the opinions from treating sources, accurately made his credibility findings, and appropriately weighed the limitations he did not consider "severe" when making his RFC determination.

### 2.  Step Five: Significant Number of Jobs

Plaintiff contends that the ALJ erred at step five when he found that plaintiff could perform jobs that existed in the national economy despite her carpal tunnel syndrome and her need to lie down several times a day.  Docket No. 10 at 6.  Plaintiff relies on the VE's testimony during cross-examination that plaintiff would not be able to sustain employment if she dropped materials during work because of her CTS.  *Id*.  However, plaintiff's argument in this respect is foreclosed by the ALJ's finding that plaintiff's subjective reports of her carpal tunnel syndrome's intensity were not supported by medical evidence.  R. at 266-69.  Thus, after rejecting the evidence that plaintiff's CTS made her unable to handle objects, the ALJ was free to discount the VE's testimony on that issue since it was inconsistent with a well-supported RFC determination.  *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (noting that hypothetical inquiries inconsistent with the RFC do not bind the ALJ).

Here, the ALJ relied upon the testimony of the VE that an individual of the same age, education, and work background as plaintiff would be able to perform the requirements of a cashier (DOT #211.462-010, light, SVP 2) with 13,000 jobs in

Colorado and over 1 million nationally, and assembly type jobs with sit/stand options such as electrical assembler (DOT #729.687-010, light, SVP 2) and nuts/bolts assembler (DOT #929.587-010, light, SVP 2) with 8,000 jobs in Colorado and 700,000 nationally. R. at 22. The VE also testified that plaintiff could take 10-15 minute breaks after every two hours of work, which is consistent with her need to sit or lie down four times a day. R. at 51. The VE testified that he would "erode" the listed cashier's jobs in the DOT by 30% to account for a purely sitting or standing position. R. at 48. The VE explained that the 30% reduction in job availability reflects the fact that the DOT does not distinguish positions that accommodate sitting/standing positions, but that with a 30% reduction the listed distinctions will fit the plaintiff's RFC in this case. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (stating that an ALJ must resolve any conflict between the VE's opinion and the DOT before relying on the VE's testimony).

The Court finds no error with the ALJ's step five analysis. The ALJ explored the potential conflict between the VE's testimony, explained the reasons for the discrepancy, and reasonably concluded based on the record that plaintiff could perform this work. *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993). Plaintiff does not allege that these jobs do not exist in significant numbers in Colorado or nationally. Thus, because plaintiff's objections relied primarily on the severity of her CTS and her need to lie down, the Court finds no error in the ALJ's determination that plaintiff may perform work consistent with the proposed RFC.

### *3. The Appeals Council's Denial*

Plaintiff seems to argue that the Appeals Council improperly ignored a Med-9 form signed by a physician that plaintiff submitted. Docket No. 10 at 8. The Appeals Council must consider additional evidence offered on administrative review if the evidence is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (quoting *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). Evidence is material if it would have changed the administrative decision. *Id*. After reviewing the evidence, the Court finds that the evidence is not material because it is duplicative and would not have altered the ALJ's decision. The Court also notes that the Med-9 form was submitted 14 months after the ALJ's decision and thus was not properly in front of the ALJ. *See Wall v. Astrue*, 561 F.3d 1048, 1064 (10th Cir. 2009) (finding that evidence that does not relate to period on or before the ALJ decision will not be considered by the Appeals Council). Therefore, the Appeals Council did not err by not remanding the case to the ALJ.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the February 5, 2009 decision of the Commissioner that plaintiff was not disabled is **AFFIRMED**.

DATED September 29, 2011.

                                      BY THE COURT:

                                      s/Philip A. Brimmer
                                      PHILIP A. BRIMMER
                                      United States District Judge